**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

Plaintiff,

v.

ENVIRONMENTAL MATERIALS, LLC,

Defendant.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

COMES NOW the Plaintiff, American Guarantee & Liability Insurance Company ("American Guarantee"), by and through its undersigned counsel of record, and for its *Complaint for Declaratory Judgment*, alleges as follows:

## I. NATURE OF CASE

1.      This is an insurance coverage case seeking declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.  American Guarantee issued a Commercial Umbrella Liability Policy to Environmental Materials, LLC ("Environmental").   Subject to any contrary or additional provisions stated in its policy, the American Guarantee policy provides follow-form excess coverage to a primary policy issued to Environmental by Employers Insurance Company of Wausau ("Wausau").

2.      American Guarantee seeks a declaration that amounts paid by Wausau: (a) to provide a defense to Environmental; and (b) to resolve claims not covered by the American

Guarantee policy, do not properly exhaust the Wausau Policy for purposes of triggering American Guarantee's duties to drop-down and provide a defense to Environmental and/or to indemnify Environmental against covered claims.

## II. PARTIES

3.      American Guarantee is incorporated under the laws of the State of New York and maintains its principal place of business in the State of New York.  Accordingly, American Guarantee is a citizen of the State of New York for purposes of diversity jurisdiction.

4.      Environmental is a limited liability company organized under the laws of the State of Delaware.  Environmental maintains its principal place of business in the State of Colorado.  Thus, Environmental is a citizen of the State of Delaware and the State of Colorado for purposes of diversity jurisdiction.

## III. JURISDICTION

5.      The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because American Guarantee, the plaintiff, and Environmental, the defendant, are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## IV. FACTS

### Background of Underlying Claims and Lawsuits

7.      Environmental is a manufacturer and installer of stone veneer whose headquarters are in Centennial, Colorado.

2

8.      In 2006, Environmental purchased a commercial general liability insurance policy from Wausau[1] for the policy period April 1, 2006 to April 1, 2007 (the "Wausau Policy").  The Wausau Policy has applicable limits of $1,000,000 each occurrence for products/completed operations, with a $2,000,000 aggregate limit.

9.      At or about the same time, Environmental purchased a Commercial Umbrella Liability Policy from American Guarantee that, subject to relevant provisions discussed in more detail below, provides follow-form excess coverage to the Wausau Policy.  The American Guarantee policy, issued under policy number AUC 5345515 01, also had a policy period of April 1, 2006 to April 1, 2007 (the "American Guarantee Policy").

10.     Environmental's work and/or product has been implicated in a number of construction defect claims and lawsuits in Colorado and throughout the country.  Many of these claims and lawsuits potentially allege that "property damage" occurred during the April 1, 2006 to April 1, 2007 timeframe, thereby potentially implicating the Wausau Policy and, upon its exhaustion, the American Guarantee Policy where the American Guarantee Policy follows the form of the Wausau Policy.

11.     Wausau has provided a defense to Environmental against most, if not all, of these claims and lawsuits under the Wausau Policy.  Wausau has also participated in settlements of some of these claims and lawsuits by making payments under the Wausau Policy.

---

[1] American Guarantee understands that Wausau is now part of the Liberty Mutual group of insurance companies and is sometimes referred to as "Liberty Mutual" in correspondence between the parties.  Nevertheless, to avoid confusion, the company will be referred to as "Wausau" throughout this complaint.

12.     In an e-mail dated March 25, 2016, counsel for Environmental advised American Guarantee that the Wausau Policy had exhausted its aggregate limit.   Counsel sought an immediate defense from American Guarantee under the American Guarantee Policy against the claims asserted in a matter captioned *Riverside Court at Secaucus Condo. Assoc., Inc. v. Baker Residential Limited Partnership et al. v. Environmental Materials, LLC*, pending in Hudson County Superior Court (PA.) under Case No. L454311.   Environmental has or will seek a defense and/or indemnification under the American Guarantee Policy for other claims.

13.     Upon investigation, American Guarantee learned that included within the purported exhaustion of the Wausau Policy was $928,223.89 paid by Wausau to defend Environmental against various claims and lawsuits.

14.     Environmental asserts that defense costs exhaust the Wausau Policy because of an endorsement added to the Wausau  Policy which makes defense cost expenditures reduce the limits of insurance (*i.e.*, the Environmental asserts the Wausau Policy is an eroding limit policy).

15.     American Guarantee also learned that an additional, confidential amount[2] was paid to settle claims asserted against Environmental in lawsuits that involved the Gold Peak at Palomino Park project in Highlands Ranch, Colorado (collectively, the "Gold Peak Lawsuits").

16.     Neither the $928,223.89 paid by Wausau to defend Environmental (the "Defense Payments") nor the confidential amount paid to settle the Gold Peak Lawsuits (the "Gold Peak Settlement"), are payments that exhaust the Wausau Policy for purposes of triggering the duty to defend or indemnify under the American Guarantee Policy.

---

[2] American Guarantee is aware of the amount paid in settlement, but does not set forth that amount herein.

4

### The American Guarantee Policy

17.   The applicable Insuring Agreement for the American Guarantee Policy states (underlining added):

> **A.   Coverage A - Excess Follow Form Liability Insurance**
>
> Under **Coverage A,** we will pay on behalf of the **insured,** those damages covered by this insurance in excess of the total applicable limits of **underlying insurance.** With respect to **Coverage A,** the terms and conditions of **underlying insurance** are made a part of this policy, except with respect to:
>
> **1.**   Any contrary provision contained in this policy; or
>
> **2.**   Any provision in this policy for which a similar provision is not contained in **underlying insurance.**
>
> With respect to the exceptions stated above, the provisions of this policy will apply.
>
> Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then **Coverage A** does not apply to such damages.

18.   "Underlying insurance" is defined to include the Wausau Policy.

19.   Thus, as is relevant here, the American Guarantee Policy follows-form to the Wausau Policy only to the extent there are no contrary provisions in the American Guarantee Policy.

20.   With respect to defense obligations, the American Guarantee Policy states, in relevant part:

> **SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS**
>
> **A.**   We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured** for damages covered by this policy:

    **1.**    Under **Coverage A,** when the applicable limit of **underlying insurance** has been exhausted by payment of claims for which coverage is afforded under this policy; …

\* \* \*

    **C.**    In those circumstances where paragraph **A.** above does not apply, we do not have the duty to assume control of the investigation and settlement of any claim, or defense of any **suit** against the **insured.** We do, however, have the right to participate in the investigation and settlement of any claim, or defense of any **suit** that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

\* \* \*

21.    Thus, American Guarantee does not have a duty to defend Environmental until the applicable limit of the Wausau Policy "has been exhausted by payment of claims for which coverage is afforded under this policy."

22.    Defense Payments do not constitute the "payment of claims" as that phrase is used in the American Guarantee Policy.

23.    Additionally, Section VI. Conditions of the American Guarantee Policy states, in relevant part:

    **9.**    **Maintenance of Underlying Insurance**

    During the period of this policy, you agree:

    **a.**    To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

    **b.**    That the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of limits by payment of claims or suits for damages covered by underlying insurance;

\* \* \*

> If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

24.     Thus, Environmental promised to maintain the limits of the Underlying Insurance except for any reduction or exhaustion of those limits "<u>by payment of claims or suits for damages</u>."

25.     Defense Payments do not constitute the "payment of claims or suits for damages."

26.     If the limits of Wausau Policy are otherwise reduced, American Guarantee is only liable to the extent that it would have been had Environmental fully complied with its duty to maintain the limits of the Wausau Policy.

27.     Accordingly, for the reasons stated above, the Defense Payments do not serve to exhaust the Wausau Policy for purposes of triggering American Guarantee's defense obligation.

28.     The American Guarantee Policy contains the following exclusion in the Contractors Limitation Endorsement (Endorsement #12):

> A.     Under **Coverage A** and **Coverage B** this policy does not apply to any liability, damage, **loss,** cost or expense:
>
> 1.     Arising out of any project insured under a wrap-up or any consolidated insurance program[.]

29.     The Gold Peak at Palomino Park project was a "project insured under a wrap-up or consolidated insurance program."

30.     Thus, the Gold Peak Lawsuits were not "claims for which coverage is afforded under [the American Guarantee Policy]."

31.     Accordingly, the Gold Peak Settlement does not serve to exhaust the Wausau Policy for purposes of triggering American Guarantee's defense obligation.

32.     Environmental also asserts that American Guarantee must "drop down" and begin providing coverage because of the purported exhaustion of the Wausau Policy.  With respect to its obligations in this regard, the American Guarantee Policy states in relevant part (<u>underlining added</u>):

### SECTION II. LIMITS OF INSURANCE

\*          \*          \*

**E.**     With respect to **Coverage A** only and subject to paragraphs **B.1.**, **B.2.**, **B.3.** and **C.** above:

    **1.**     If the limits of **underlying insurance** have been reduced <u>solely by payment of **loss** for which coverage is afforded under this policy</u>, this policy will drop down to become immediately excess of the reduced underlying limit; or

    **2.**     If the limits of **underlying insurance** have been exhausted <u>solely by payment of **loss** for which coverage is afforded under this policy</u>, this policy will continue in force as **underlying insurance**.

33.     The American Guarantee Policy defines "loss" as:

**Loss** means those sums actually paid in the settlement or satisfaction of a claim which the **insured** is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage.

34.     Thus, under Section II, the American Guarantee Policy requires reduction or exhaustion of the Wausau Policy by payment of settlements or judgments covered by the American Guarantee Policy before the American Guarantee Policy "drops down."

35.     Defense Payments do not constitute "sums actually paid in the settlement or satisfaction of a claim."

36.     As discussed above, Gold Peak Settlement is not the settlement of a claim "for which coverage is afforded under [the American Guarantee Policy]."

8

37.     Accordingly, neither the Defense Payments nor the Gold Peak Settlement apply to determine when American Guarantee must "drop down" to become immediately excess of the remaining limits on the Wausau Policy.

38.     Additionally, upon information and belief, the Gold Peak Lawsuits implicated multiple policy periods other than just the April 1, 2006 to April 1, 2007 period covered by the Wausau Policy, including additional periods for which Wausau or a related Liberty Mutual company provided coverage.  However, the entire Gold Peak Settlement was allocated to the Wausau Policy.

39.     Upon information and belief, the allegations in the Gold Peak Lawsuits and the facts learned during discovery in those suits do not support an allocation of the entire settlement to only one policy period under Colorado law.

### COUNT I – DECLARATORY RELIEF
#### (Applicable Law)

40.     American Guarantee incorporates by reference all preceding paragraphs.

41.     Upon information and belief, it is Environmental's position that the American Guarantee Policy should be interpreted according to the law of the state in which the underlying claim arises.

42.     It is American Guarantee's position that the American Guarantee Policy should be interpreted under Colorado law, regardless of where the underlying claim arises.

43.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between American Guarantee, on one hand, and Environmental, on the other, with regard to the law that applies to the interpretation of the American Guarantee Policy.

44.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201, American Guarantee requests that the Court declare that the American Guarantee Policy shall be interpreted according to Colorado law, regardless of where the underlying claim arises.

## COUNT II – DECLARATORY RELIEF
### (Regarding Defense Payments)

45.     American Guarantee incorporates by reference all preceding paragraphs.

46.     Environmental contends that the Defense Payments and the Gold Peak Settlement serve to exhaust the Wausau Policy and trigger defense obligations under the American Guarantee Policy.

47.     American Guarantee, on the other hand, contends that the Defense Payments and the Gold Peak Settlement do not serve to exhaust the Wausau Policy for purposes of triggering its defense obligations.

48.     There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between American Guarantee, on one hand, and Environmental, on the other, with regard to whether the Defense Payments and the Gold Peak Settlement serve to exhaust the Wausau Policy and trigger defense obligations under the American Guarantee Policy.

49.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, American Guarantee requests that the Court declare the following:

a.      That the Defense Payments do not constitute the "payment of claims" as that phrase is used in the American Guarantee Policy and therefore do not serve to exhaust the Wausau Policy for purposes of triggering American Guarantee's defense obligations under the American Guarantee Policy;

b.	That the Gold Peak Lawsuits were not "claims for which coverage is afforded under [the American Guarantee Policy]" as that phrase is used in the American Guarantee Policy and therefore do not serve to exhaust the Wausau Policy for purposes of triggering American Guarantee's defense obligations under the American Guarantee Policy; and

c.	That any amounts that, in fact, exhaust the Wausau Policy but do not count toward exhaustion of the Wausau Policy for purposes of triggering the defense obligations of the American Guarantee Policy must be satisfied by Environmental before the American Guarantee Policy is triggered.

## COUNT III – DECLARATORY RELIEF
### (Regarding Drop Down Obligations)

50.	American Guarantee incorporates by reference all preceding paragraphs.

51.	Environmental contends that the Defense Payments and the Gold Peak Settlement serve to exhaust the Wausau Policy and require the American Guarantee Policy to drop down and either become immediately excess of the remaining limits on the Wausau Policy, or to continue in force as primary insurance upon exhaustion of the Wausau Policy.

52.	American Guarantee, on the other hand, contends that the Defense Payments and the Gold Peak Settlement do not serve to exhaust the Wausau Policy and require the American Guarantee Policy to drop down and either become immediately excess of the remaining limits on the Wausau Policy, or to continue in force as primary insurance upon exhaustion of the Wausau Policy.

53.	There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between American Guarantee, on one hand, and Environmental, on the other, with

11

regard to whether the Defense Payments and the Gold Peak Settlement serve to exhaust the Wausau Policy and require the American Guarantee Policy to drop down and either become immediately excess of the remaining limits on the Wausau Policy, or to continue in force as primary insurance upon exhaustion of the Wausau Policy.

54.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201, American Guarantee requests that the Court declare the following:

a.      That the Defense Payments do not constitute "sums actually paid in the settlement or satisfaction of a claim" as that phrase is used in the American Guarantee Policy and therefore do not serve to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's obligation to drop down;

b.      That the Gold Peak Settlement does not constitute the "payment of **loss** for which coverage is afforded under [the American Guarantee Policy]" and therefore does not serve to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's obligation to drop down; and

c.      That any amounts that, in fact, exhaust the Wausau Policy but do not count toward exhaustion of the Wausau Policy for purposes of triggering the drop down obligations of the American Guarantee Policy must be satisfied by Environmental before the American Guarantee Policy must drop down.

## COUNT IV – DECLARATORY RELIEF
### (Alternative Relief – Reallocation of the Gold Peak Settlement)

55.     American Guarantee incorporates by reference all preceding paragraphs.

56.     In the alternative only, if it is determined that the Gold Peak Settlement serves to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's defense

and drop down obligations, then there exists a genuine and bona fide dispute, and an actual controversy and disagreement, between American Guarantee, on one hand, and Environmental, on the other, with regard to whether the Gold Peak Settlement was properly allocated entirely to the Wausau Policy.  Environmental contends the allocation was proper.  American Guarantee contends the settlement should have been allocated equally across each triggered policy period, thereby reducing the amount properly payable under the Wausau Policy.

57.     Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, American Guarantee requests that the Court reallocate the Gold Peak settlement across each triggered policy period and declare that only the amount allocable to the April 1, 2006 to April 1, 2007 period serves to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's defense and drop down obligations.

## PRAYER FOR RELIEF

WHEREFORE, American Guarantee prays as follows:

1.     For a declaration that Colorado law applies to the interpretation of the American Guarantee Policy, regardless of where the underlying claim arises;

2.     For a declaration that the Defense Payments do not serve to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's defense and drop down obligations;

3.     For a declaration that the Gold Peak Settlement does not serve to exhaust the Wausau Policy for purposes of triggering the American Guarantee Policy's defense and drop down obligations, or alternatively, for a reallocation of the Gold Peak Settlement;

4.     For reasonable costs and attorneys' fees to the fullest extent permitted by law; and

5.      For any other relief the Court deems just and equitable.

DATED: October 3, 2016.

Respectfully submitted,
COZEN O'CONNOR


By: *s/ Christopher S. Clemenson*
        Christopher S. Clemenson (#34423)
        Cozen O'Connor
        707 – 17th Street, Suite 3100
        Denver, CO 80202
        Telephone: (720) 479-3900
        E-mail: cclemenson@cozen.com
        *Attorneys for Plaintiff*

LEGAL\27489942\1
LEGAL\27627949\4 00099.0001.000/388193.000