IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02478-MSK

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

    Plaintiff,

v.

ENVIRONMENTAL MATERIALS, LLC,

    Defendant/Third Party Plaintiff,

v.

MOODY INSURANCE AGENCY, INC.,

    Third Party Defendant.

___

**OPINION AND ORDER DENYING MOTION FOR LEAVE TO
AMEND COUNTERCLAIMS**
___

**THIS MATTER** comes before the Court pursuant to the Defendant's ("EM") Motion for Leave to Amend **(# 73)** its counterclaims, the Plaintiff's ("AGLI") response **(# 74)**, and EM's reply **(# 76)**.

AGLI is the insurer on an umbrella policy covering EM's business operations. EM is or has been involved in several lawsuits, has notified AGLI that it has exhausted its primary coverage, and requested defense and indemnification from AGLI for ongoing suits. AGLI's Complaint **(# 1)** seeks a declaration that, for various reasons, EM has not yet exhausted its primary coverage and that AGLI has no present duty to EM under the umbrella policy.

In November 2016, EM filed an Answer and asserted both Counter and Third Party Claims **(# 10)**. As relevant here, EM asserted counterclaims against AGLI for: (i) a declaration

1

of its rights under the umbrella policy; (ii) breach of contract, in that AGLI failed to tender the defense and indemnity that EM is entitled to under the umbrella policy; (iii) negligence and negligent misrepresentation, in the AGLI and its agents breached their duty of care when selecting and issuing a policy that failed to provide EM with the nature or levels of coverage it requested; and (iv) a request that the AGLI policy be reformed to provide EM with the coverage it originally intended to obtain. In March 2017, EM amended its Answer to clarify certain claims against the Third Party Defendant, but did not materially alter its counterclaims against AGLI.

EM contends that it first received written discovery responses from AGLI on March 31, 2017. AGLI made a second production of documents on July 11, 2017. There is some apparent dispute between the parties as to whether the information pertinent to EM's current motion was contained in the first production or the second. AGLI's position is that the pertinent material was contained entirely within the March 2017 production and that material produced in July 2017 is largely irrelevant to EM's claims; EM's reply brief contends that it was "impossible [for it] to interpret" the documents produced in March 2017 "without the benefit of [material produced in July 2017] to provide context." In either event, EM asserts that, upon receiving the July 2017 production, it "began reviewing the complete set of documents in context." It then "worked promptly to detail its findings in a settlement demand letter" that it sent to AGLI on August 31, 2017. AGLI never responded to this letter, and so, on October 18, 2017, EM filed the instant motion. The motion seeks leave of the Court to allow EM to amend its counterclaims against AGLI to assert two new additional claims, one for common-law bad faith breach of contract and one for bad faith breach of contract in violation of C.R.S. § 10-3-1115 *et seq.*

Because EM's request to amend comes after the Scheduling Order's **(# 57)** March 3, 2017 deadline for amendment of pleadings, EM must make two showings here. First, it must

show that amendment of the Scheduling Order is warranted under Fed. R. Civ. P. 16(b)(4), then it must show that amendment of the counterclaims themselves is warranted under Fed. R. Civ. P. 15(a)(2). *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015). Turning first to amendment of the Scheduling Order, EM must demonstrate "good cause" to modify the deadline for amendment of pleadings. Fed. R. Civ. P. 16(b)(4). To satisfy that standard, EM must show that it could not meet the deadline in the scheduling order despite its diligent efforts. A party who learns of new information during discovery might satisfy the "good cause" standard, but a party who already knew of the underlying conduct may not. *Birch*, 812 F.3d at 1247.

Here, the Court is troubled by a mismatch between the facts that EM claims to have first discovered from AGLI's discovery responses and the substantive allegations of its proposed new claims. EM's proposed Second Amended Counterclaims recites the particular facts that EM discovered as a result of AGLI's production of documents: (i) that Moody's and AGLI had certain correspondence in 2006 about EM's primary coverage; (ii) that on two occasions in 2006, AGLI "issued a quote to [EM] which incorrectly identified" the operation of the underlying policy;[1] (iii) that those quotes were contingent upon AGLI obtaining a copy of the primary policy within 60 days, but AGLI issued its policy to EM without doing so; (iv) that AGLI failed to review the primary policy when it did obtain it, and thereby "performed negligent and inadequate underwriting" and never corrected error in AGLI's policy that mischaracterized the primary policy; (v) that despite having a copy of the primary policy, AGLI again issued an umbrella policy to EM in 2007 that again incorrectly characterized the operation of the primary

---

[1] This court is troubled by the fact that this and other quotes for coverage were sent by AGLI to EM more than a decade ago. EM can hardly complain that such quotes that were sent to it by AGLI were "in [AGLI's] exclusive possession prior to production" in 2017. *Docket # 73-1, ¶ 34.* It may be that EM might not have recognized the error contained in the quote until recently, but that is a different issue than contending that the quote itself was not in EM's possession prior to mid-2017.

3

policy; and (vi) that AGLI continued that error when issuing a 2008 umbrella policy, notwithstanding that documents in its possession could have revealed that error. *Docket* # 73-1, ¶ 34(a)-(j). However, EM's proposed common-law bad faith claim against AGLI recites an entirely different set of actions taken by AGLI, allegedly in bad faith: (i) that AGLI "unreasonably fail[ed] to defend and indemnify [EM] in the claims and suits; (ii) that it "unreasonably fail[ed] to properly construe [its own] policies"; (iii) that it "misrepresented pertinent facts or provisions relating to" how its policies interacted with the underlying primary policy; (iv) that it "fail[ed] to adopt and implement reasonable standards for the prompt investigation of claims; (v) that it "misrepresent[ed] or refus[ed] to honor" an ostensible promise "that [AGLI's] policies would follow form" of the underlying policy; and (vi) that it "fail[ed] to correctly adapt the [AGLI] policies to the terms of the primary policies to which they follow." *Id.* at ¶ 70(a)-(h).

Clearly, the allegations that support the common-law bad faith claim are, almost entirely, completely independent of the facts that EM learned through discovery. Through discovery, EM learned that although it <u>thought</u> AGLI was issuing it an umbrella policy that would follow the terms of its primary coverage, due to alleged negligence by AGLI, the actual umbrella policy that was issued did not do so. Put differently, that discovery related to events that related to the <u>issuance</u> of policies in 2006-2008. But the facts giving rise to the bad faith breach claim are facts that occurred later, when EM made claims on those policies and AGLI rejected those claims. Thus, the bad faith claims relate to alleged misconduct by AGLI in <u>interpreting</u> or <u>applying</u> the umbrella policies, not in issuing them. More importantly, EM has been aware, since before the commencement of the litigation, that AGLI has rejected its claims under the terms of the umbrella policy as issued. EM has also been aware since at least the time of its first

Answer and Counterclaims – which alleged that AGLI and Moody's sold it insufficient coverage -- that it intended to purchase a policy that would cover the types of claims that it now asserts. These facts would have been sufficient for EM to assert the common-law bad faith claim it now seeks to add, as early as November 2016. Accordingly, the Court finds that, as reflected in the proposed Second Amended Counterclaims, the common-law bad faith claim EM seeks to add is not premised upon information that EM obtained in discovery in 2017, but is in fact based on information that was already known to EM. EM has therefore not shown good cause to amend the Scheduling Order.

The same rationale applies to EM's request to add a new counterclaim sounding in statutory bad faith. That claim, as recited in the proposed Second Amended Counterclaims, is fairly barebones. It states only that "AGLI acted and continues to act unreasonably in denying and/or delaying claims for defense and indemnity" and asserts that "the newly discovered facts . . . supporting this [claim] only became known to EM recently." *Docket* # 73-1, ¶ 75, 76. Assuming that this claim is intended to incorporate the same operative facts that underlie the common-law bad faith claim, the same outcome results: EM has been aware of the facts that support such a claim since at least November 2016, and thus, its request to amend the Scheduling Order to amend its counterclaims is not supported by a showing of good cause.

Because the Court finds that EM has not shown that it is entitled to amend the Scheduling Order under Rule 16, it need not reach the question of whether EM has shown that it should further be permitted to amend its pleading under Rule 15. Were the Court to reach this question, it would be inclined to find that EM's request to amend was untimely. The record reflects that the March 2017 production by AGLI gave EM some notice of the machinations that led to the issuance of the 2006 policy, even if that notice was insufficient to allow EM to completely and

conclusively understand the entirety of the situation. Because all that is necessary under Fed. R. Civ. P. 11(b)(3) for a party to seek to interpose a new claim is a good-faith belief in its ability to obtain evidentiary support for its assertions "after a reasonable opportunity for further investigation or discovery," the production of significant documents to EM in March 2017 was likely enough to allow EM to seek to amend at that time. By waiting until AGLI's production was complete (plus an additional month of analysis and an extra six weeks while EM then sought to negotiate settlement terms) before moving to amend, EM has demonstrated a degree of undue delay that warrants denial of leave to amend.

Accordingly, the Court **DENIES** EM's Motion for Leave to Amend **(# 73)**.

Dated this 25th day of January, 2017.

**BY THE COURT:**

_[signature: Marcia S. Krieger]_

Marcia S. Krieger
Chief United States District Judge