IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 16-CV-2478-MSK

**AMERICAN GUARANTEE & LIABILITY INSURANCE CO.,**

    Plaintiff,

*v*.

**ENVIRONMENTAL MATERIALS LLC,**

    Defendant/Third-Party Plaintiff,

*v*.

**MOODY INSURANCE AGENCY INC.,**

    Third-Party Defendant.

---

**OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Summary Judgment (**# 79**) and the Third-Party Defendant's Motion for Partial Summary Judgment (**# 80**). The Court also has reviewed the opposition and supporting reply briefing thereto (**#81, #82, #87, #88**). For the reasons that follow, the Plaintiff's Motion is granted, in part, and the Third-Party Defendant's Motion is denied.

### I.  JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## II. BACKGROUND[1]

Defendant Environmental Materials LLC (Environmental) is a manufacturer and installer of stone veneer. It purchased multiple Commercial Umbrella Liability Policies from Plaintiff American Guarantee & Liability Insurance Co. (AGLIC) for the 2006–07, 2007–08, and 2008–09 policy periods. Each Umbrella Policy provided excess coverage in accordance with an underlying commercial general liability (CGL) insurance policy issued by Employers Insurance Company of Wausau.[2] Coverage under the Umbrella Policy was triggered when the limits of the Wausau Policy were exhausted.

Before the policy periods at issue, the Wausau Policy provided for "Defense Outside Limits", which meant that costs of defense were not applied against its policy limits. For the relevant time periods (2006 to 2009), however, the Wausau Policy provided for "Defense Within Limits", which meant that costs of defense were applied against policy limits.[3] Although the underlying Wausau CGL coverage changed from "Defense Outside limits" to "Defense Within Limits" in the 2006–07 policy period, terms of the Umbrella Policy did not change. Indeed, all the Umbrella Policies are based on the Wausau Policy providing "Defense Outside Limits" coverage.

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to AGLIC, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). Factual disputes are noted as necessary.

[2] Because each Umbrella Policy contained functionally the same provisions, the Court will refer to them collectively as the "Umbrella Policy" for ease of reading and as separate policies only where necessary. When referring to them as a singular unit, the Court will cite to the first Umbrella Policy (**# 79-2**). The Court will do the same for the underlying Wausau Policy (**# 83-4**).

[3] These policies had annual limits of $1 million per occurrence and $2 million in aggregate losses. (**# 83-4 at 19**.)

2

To procure insurance, Environmental used the services of Third-Party Defendant Moody Insurance Agency (Moody), a retail insurance broker.[4] Moody worked with Eydent Insurance Brokers LLC (Eydent), a wholesale insurance broker that contracted with AGLIC and its parent company, Zurich Insurance Group. Each year there were several exchanges of information between Environmental and Moody, and then between Moody and Eydent about Environmental's policy needs. This exchange resulted in policy applications and quote letters from Wausau, the primary CGL insurance broker, involving the underlying Wausau Policy itself.

In early 2016, Environmental notified AGLIC that it was involved in a lawsuit in New Jersey, and that the Wausau Policy limits were on the verge of exhaustion for one or more of the 2006 to 2009 policy periods. The New Jersey matter was settled with AGLIC contributing approximately $500,000 to the settlement. In March 2016, Environmental advised AGLIC that the Wausau Policy limits had been exhausted, and requested that AGLIC undertake its defense in an ongoing lawsuit in Pennsylvania. Upon investigation, AGLIC learned that the Wausau Policy limits had been exhausted, in part, by application of more than $900,000 of defense costs. Under AGLIC's interpretation of the Umbrella Policy — which was premised on an underlying CGL policy that provided Defense Outside Limits — coverage and a duty to defend were not triggered.

In addition, exhaustion of the limits of the Wausau Policy resulted from application of a settlement payment made in accordance with a "wrap-up" program.[5] AGLIC's view was that,

---

[4] The nature of Environmental's claims against Moody is that Moody failed to alert Environmental to the coverage gaps noted by AGLIC. The Court discusses these facts more fully in its analysis below.

[5] An insurance "wrap-up" program is a consolidated insurance arrangement Environmental used in the construction context, in which all stakeholders (contractors, subcontractors) are protected by a single CGL policy.

because the payment was excluded from coverage under the Umbrella Policy, application of the payment to the Wausau Policy limits did not trigger Umbrella Policy coverage.

AGLIC seeks declaratory relief in four claims: (1) a determination that Colorado law is applies for interpretation of the policies, (2) a determination that the Wausau Policy was not exhausted by the defense costs and wrap-up settlement payment based on different Policy provisions, (3) a determination on what AGLIC's drop-down obligations are, and (4) in the event that the wrap-up settlement payment triggered coverage, a reallocation of the settlement payment across multiple policy periods. In its Answer (**# 51**), Environmental alleges counterclaims against AGLIC for: (1) a declaration of its rights under the Umbrella Policy, (2) breach of contract based on AGLIC's failure to tender a defense and indemnify, (3) negligence and negligent misrepresentation based on AGLIC's breach of its duty of care when selecting and issuing a policy that failed to provide Environmental with the coverage it requested, and (4) that the Umbrella policy be reformed to provide Environmental with the coverage it originally intended to obtain. Environmental also brings third-party claims against Moody for negligence, negligent misrepresentation and breach of contract.

AGLIC functionally moves for summary judgment all claims and counterclaims (**# 79**). Moody moves for partial summary judgment on Environmental's breach of contract claim (**# 80**).

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be

4

proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producers Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. AGLIC'S MOTION FOR SUMMARY JUDGMENT

This Motion seeks a determination of AGLIC's and Environmental's rights and obligations under the Umbrella Policy relative to exhaustion of the coverage limits of the underlying Wausau Policy. The two areas of contention are whether payments for defense costs and the settlement payment under the wrap-up program count toward exhaustion of the Wausau Policy and the triggering of the Umbrella Policy. Environmental also seeks a determination of this issue in its first Counterclaim. There are no genuine disputes as to material fact regarding these issues. They can be determined as a matter of law through interpretation of the terms and provisions of the Umbrella Policy.

AGLIC argues that under the terms of the Umbrella Policy, its coverage was not triggered to the extent the policy limits of the underlying Wausau Policy were exhausted by application of payments for defense costs or a settlement payment made pursuant to a wrap-up program. AGLIC contends that in this regard there was a gap in coverage between the Wausau Policy and the Umbrella Policy for which it is not responsible.

Environmental counters that the Umbrella Policy "followed form", meaning that its coverage was the same as the Wausau Policy except where the terms of the Umbrella Policy specifically contradicted those of the Wausau Policy. Environmental further argues that no term in the Umbrella Policy expressly contradicted the "Defense Within Limits" provision in the Wausau Policy or application of defense costs and or settlement payments made under a wrap-up program to exhaust the Wausau Policy limits. In this regard there was no gap in coverage because the Umbrella Policy coverage was triggered when the Wausau Policy limits were exhausted in accordance with its terms.

Both parties agree that Colorado law governs. In interpreting the provisions of the Umbrella Policy, the Court is mindful that Colorado law requires it to give them the meaning given ordinary language under ordinary principles of contract interpretation. *See Ace Am. Ins. Co. v. Dish Network LLC*, 883 F.3d 881, 887 (10th Cir. 2018); *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). The Court reads the policy as a whole, does not read its provisions in isolation, and strives to give effect to the intent and reasonable expectations of the parties. *See Cyprus Amax*, 74 P.3d at 299. Whenever possible, such intent is discerned from the policy itself. *See Bengtson v. USAA Property & Cas. Ins.*, 3 P.3d 1233, 1235 (Colo. App. 2000). The Court generally construes a policy's coverage provisions to provide the broadest possible coverage. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998).

Unless there is an ambiguity in the language of an insurance policy, the Policy must be enforced as written. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo. 1993). A mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). Rather, a provision is ambiguous if it is susceptible to more than one reasonable interpretation. *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo. 1990). If an ambiguity in the insurance policy language is found, and there is no evidence of the parties' mutual intent, the provision should be construed against the drafter — the insurer — in favor of providing coverage to the insured. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).

There is no dispute that the Umbrella Policy is an *excess* policy, designed to provide coverage when the coverage of an underlying CGL policy, such as the Wausau Policy, is exhausted. Under Colorado law, excess insurance policies presumptively *follow form*, meaning

7

that the excess policy adopts the terms and conditions of the underlying policy. This presumption can be rebutted only by express language in the policy limiting the coverage. *Radil v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 233 P.3d 688, 692 (Colo. 2010).

> Absent *express* language defining the coverage endorsed or a disclaimer of particular terms or conditions, the excess insurer's follow-form endorsement . . . tracks the underlying coverage in every respect, thereby incorporating the terms and conditions that define the underlying coverage. *Id* at 689 (emphasis added).

The Court also notes that the Tenth Circuit encountered the issue presented in this case, albeit in the context of Kansas law. Although its holding is not binding precedent, its reasoning provides an analytical template. In *Coleman Co. v. California Union Insurance Co.*, 960 F2d 1529 (10th Cir. 1992), the question was whether a *drop-down* defense duty in an excess policy was triggered when the insured reached its self-insured limit (retained limit) of $2.5 million. Like Colorado, Kansas law recognized the presumption that an excess policy follows the form of the underlying policy. The Circuit Court began its analysis with consideration of the excess policy's coverage language to determine whether it contained a follow-form endorsement. Finding that it did, the Court then considered whether there was a clear and specific provision in the excess policy expressing the insurer's intent to deviate from the follow-form presumption. Finding none, the Court held that the exhaustion of the self-insured limit triggered the excess policy's coverage and the insurer's duty to defend.

With these precepts in mind, the Court begins with the language of the Umbrella Policy. Section I provides:

**Coverage A — Excess Follow Form Liability Insurance**

Under Coverage A, we will pay on behalf of the insured, those damages covered by this insurance in excess of the total applicable limits of underlying insurance. With respect to Coverage A, the terms and conditions of underlying insurance are made a part of this policy, except with respect to:

8

> 1. Any contrary provision contained in this policy;
>
> 2. Any provision in this policy for which a similar provision is not contained in underlying insurance.
>
> With respect to the exceptions stated above, the provisions of this policy will apply. Notwithstanding anything to the contrary contained above, if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable limits of insurance by payment of claims, then Coverage A does not apply to such damages.

(# **79-2 at 27** (hereinafter the "Description of Coverage" provision).)

The Court understands this provision to state two things. First, it limits the scope of coverage under the Umbrella Policy to "damages covered by this insurance". Second, it unequivocally states that the Umbrella Policy is a follow-form excess policy. Accordingly, the "terms and conditions" of the Wausau Policy are incorporated into the Umbrella Policy except where (1) the Umbrella Policy contains a provision that is expressly contrary to one in the underlying Wausau Policy[6] or (2) the Umbrella Policy has a provision for which there is no similar provision in the Wausau Policy[7].

Based on the express language of this provision, the Court finds that the Umbrella Policy is a follow-form policy. Consequently, to deviate from the provisions of the Wausau Policy, the Umbrella Policy must contain a specific provision that clearly expresses AGLIC's intent to contradict a term in the Wausau Policy.

**A. Defense Fees and Costs (Supplementary Payments)**

As noted, the purpose of an excess policy is to provide coverage when the coverage of an underlying policy has been exhausted. In this case, the Wausau Policy unequivocally states that

---

[6] This interpretation is consistent with the testimony of Karen Glosky, Environmental's underwriting manager. (# **79-5 at 105:3–23**.)

[7] There is no argument that this exception applies.

defense fees and costs (denominated as Supplementary Payments) will be applied against (and can result in exhaustion of) its coverage limits — a defense within limits.

An endorsement to the Wausau Policy states:

**Defense Within Limits Endorsement**

THIS IS A DEFENSE WITHIN LIMITS COVERAGE. AMOUNTS WE SPEND ON DEFENSE OF CLAIMS AND SUITS WILL REDUCE THE LIMITS OF LIABILITY.

\* \* \*

ALL SUPPLEMENTARY PAYMENTS MADE PURSUANT TO THIS ENDORSEMENT WILL REDUCE THE LIMITS OF INSURANCE AVAILABLE.

(**# 83-4 at 101–02** (hereinafter the "Defense Within Limits" provision).)

The parties agree that there is no provision in the Umbrella Policy that (1) expressly addresses this provision, (2) states that Supplementary Payments will not be considered in determining whether the limits of an underlying CGL policy have been exhausted, nor (3) reserves to AGLIC the right to determine whether the limits of an underlying CGL policy have been exhausted and on what basis such determination will be made. Rather, AGLIC points to two provisions from which it argues the Court can infer its intent to contradict the Defense Within Limits provision of the Wausau Policy.

  1. *Defense Obligations Provision*

The first provision governs to AGLIC's defense obligations. It reads:

A. We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy:

  1. Under Coverage A, when the applicable limit of underlying insurance has been exhausted by payment of claims for which coverage is afforded under this policy; . . .

> C. In those circumstances where paragraph A. above does not apply, we do not have the duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured. We do, however, have the right to participate in the investigation and settlement of any claim, or defense of any suit that we feel may create liability on our part under the terms of this policy. If we exercise this right, we will do so at our expense.

**(# 79-2 at 29** (hereinafter the "Defense Obligations" provision).)

The parties agree that Coverage A is the coverage at issue. AGLIC argues that this provision is contrary to the Defense Within Limits provision in the Wausau Policy because under this provision (1) AGLIC has a duty to defend only in suits brought to recover damages covered by the policy, and (2) AGLIC's duty arises only when "the applicable limit of underlying insurance has been exhausted by payment of claims for which coverage is afforded under this policy". AGLIC argues that neither *damages* nor *claim* can be reasonably understood to include Supplementary Payments of defense fees and costs, and so, by negative inference, this provision contradicts the Defense within Limits provision in the Wausau Policy.

AGLIC's argument is unpersuasive for several reasons. First, the Defense Within Limits provision affects exhaustion of the policy limits, which in turn affects when Umbrella Policy coverage is *triggered*. The Defense Obligations provision cited by AGLIC does not address the issue of coverage under the Umbrella Policy, or when it is triggered, only when AGLIC has a duty to defend. Many insurance contracts (including these) impose two different types of duties on insurers — the duty to pay claims and the duty to defend. These duties are viewed separately and the limitation in one does not necessarily act to modify the other. Because this provision concerns only the duty to defend, it cannot be a clear and explicit contradiction of the Defense Within Limits provision to the extent that it triggers coverage under the Umbrella Policy. In other words, to the extent that this provision clearly and explicitly expresses AGLIC's intent to

11

contradict the Defense Within Limits, such contradiction would be limited to AGLIC's duty to defend.

Second, even with a limited scope, this provision does not express a clear intent to contradict the Defense Within Limits provision. As noted above, it does not refer to the Wausau Policy or the Defense Within Limits provision. Indeed, neither the Umbrella Policy nor the Wausau Policy define the terms *damages*[8] or *claim*. The parties offer a variety of plausible meanings for these terms drawn from extrinsic sources, but such proffer merely demonstrates the obvious — that the meaning of the terms is not clear and that the parties did not have an agreed upon understanding of their meaning. Without a clear and generally accepted meaning, no negative inference that Supplementary Payments are excluded can be reasonably drawn. Indeed, an insured could reasonably understand that there is no distinction between the meaning of a Supplementary Payment and a claim in the Umbrella Policy because 1) both the Umbrella Policy and the Wausau Policy provide for payment of legal fees and expenses and denominate them as Supplementary Payments and 2) neither policy distinguishes between Supplementary Payments and claims. Thus, an insured could reasonably expect that both policies would operate in the same way — a Supplementary Payment is a "claim for which coverage is afforded" under the Umbrella policy. *See Coleman*, 960 F2d at 1535–36. Accordingly, the Court finds that this provision does not clearly state an intent by AGLIC to contradict the Defense Within Limits provision in the underlying Wausau Policy.

### 2. *Limits of Insurance Provision*

The second provision specifies the limitations of insurance. It reads:

---

[8] The Court rejects AGLIC's argument with regard to the term *damages* for another reason, as well. *Damages* in this context pertains only to the nature of the lawsuit brought against the insured.

12

E. With respect to Coverage A only and subject to paragraphs B.1., B.2., B.3., and C. above:

1. If the limits of underlying insurance have been reduced solely by payment of loss for which coverage is afforded under this policy, this policy will drop down to become immediately excess of the reduced underlying limit; or

2. If the limits of underlying insurance have been exhausted solely by payment of loss for which coverage is afforded under this policy, this policy will continue in force as underlying insurance.

(**# 79-2 at 29** (hereinafter the "Limits of Insurance" provision).)

This provision is substantially broader that the previous one. It addresses when coverage under the Umbrella Policy is *triggered*. This provision limits the triggering of AGLIC's coverage to situations in which the policy limits of the Wausau Policy have been exhausted "solely by payment of loss for which coverage is afforded" under the Umbrella Policy. The Umbrella Policy defines *loss* as "those sums actually paid in the settlement or satisfaction of a claim which the insured is legally obligated to pay as damages because of injury or offense, after making proper deductions for all recoveries and salvage." (**# 79-2 at 35**.) In this context, AGLIC argues that *loss* does not include Supplementary Payments for defense fees and costs, and thus their application against policy limits of the Wausau Policy does not trigger the drop down of excess coverage.

This construction is a closer call. The provision does not explicitly refer to the Defense Within Limits provision of the Wausau Policy, and neither the subject provision nor the definition of *loss* specifically refers to nor distinguishes Supplementary Payments from "sums actually paid in the settlement or satisfaction of a claim". AGLIC's interpretation of these provisions is a logical one, but again, it is based on the negative inference - that because the term *loss* does not include a Supplementary Payment, Supplementary Payments cannot be

13

applied to reduce the limits of the Wausau Policy for purposes of triggering Umbrella Policy coverage.

As logical as AGLIC's proffered interpretation might be, the question is whether this provision clearly, specifically, and explicitly expresses AGLIC's intent to contradict the Defense Within Limits provision in the Wausau Policy. The Court finds it is not sufficiently clear and specific to accomplish that task.

The defined term *loss* is not so specific that it clearly excludes Supplementary Payments. According to its definition, *loss* includes all "sums actually paid in the settlement or satisfaction of a claim." The general nature of this phrase leaves out what type of payment is made, to whom the payment is made, and the purpose of the payment s are made. The only restriction is that the payment relates in some way to the settlement or satisfaction of a claim. A reasonable insured could reason that payment of attorney fees and costs are related to the settlement or satisfaction of a claim, especially where both the Wausau Policy and Umbrella Policy provide for such payment.

Thus, the Court finds that neither of the proffered provisions clearly and explicitly state AGLIC's intent to contradict the Defense Within Limits provision of the Wausau Policy. Consequently, defense costs paid under the Wausau Policy are properly credited against its limits for the purposes of triggering Umbrella Policy coverage, and there is no insurance gap.

**B.  Wrap-Up Program**

AGLIC also seeks a determination that the Umbrella Policy was not triggered by application of amounts paid under the Wausau Policy to settle claims covered by the wrap-up insurance program. The parties agree that a payment was made in accordance with a wrap-up program provided for under the Wausau Policy. They also agree that such payment is excluded

14

by the above terms of the Umbrella Policy. The question is thus whether the Umbrella Policy contains a clear, explicit statement of AGLIC's intent to contradict application of the settlement payment against the policy limits for purpose of triggering excess coverage. Here, the outcome is different.

Both the Description of Coverage[9] and the Limits of Insurance[10] provisions in the Umbrella Policy restrict coverage to that expressly stated therein and expressly state that there is a drop-down obligation only if the limits of the underlying policy are exhausted by payments of losses covered by the Umbrella Policy. Then the Limits of Insurance provision states that Umbrella Policy coverage "does not apply to any liability, damage, loss, cost or expense . . . [a]rising out of any project insured under a wrap-up or any consolidated insurance program" (**# 79-2 at 21**).

Reading these provisions together, they clearly, and explicitly advise the insured that notwithstanding the provisions of the underlying policy, payments for wrap-settlements are not covered by the Umbrella Policy and thus the coverage under it will not drop down if such payments result in the exhaustion of the underlying coverage. In this regard, the Umbrella Policy clearly and unambiguously does not follow form.

## C. The effect these Construction Determinations

In summary, the Court interprets the Umbrella Policy to follow form as to Supplemental Payments of defense fees and costs but not as to the Settlement Payment. The briefing of the

---

[9] "Under Coverage A, we will pay on behalf of the insured, *those damages covered by this insurance* in excess of the total applicable limits of underlying insurance." (**# 79-2 at 27** (emphasis added).)

[10] "If the *limits of underlying insurance have been reduced solely by payment of loss for which coverage is afforded under this policy*, this policy will drop down to become immediately excess of the reduced underlying limit". (**# 79-2 at 29** (emphasis added).)

15

parties assumed that both issues would be resolved in favor of one or the other, but the split in determination gives rise to a factual issue – at the time that demand was made on AGLIC, had the limits of the underlying Wausau Policy exhausted absent application of the Settlement Payment? Unfortunately, the answer to that question is not clear from the record,[11] and the parties have not addressed it. This prevents a resolution of the claim that AGLIC was in breach of its obligations when it declined to provide a requested defense.

In addition, the briefing contains arguments addressing to a host of additional issues, many of which are subsets of those just resolved. Some issues are likely rendered moot by this determination; others may continue. However, the parties are in a better position than the Court to determine which of the issues remain. Accordingly, they should have the opportunity to confer and determine what claims require a trial.

## V. MOODY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Also pending before the Court is Moody's Motion for Partial Summary Judgment directed at Environmental's Sixth Third-Party Claim for relief for breach-of-contract. Under Colorado law, a claim for breach of contract requires proof of the following elements: (1) that an enforceable contract existed between the parties; (2) that the plaintiff fully performed its obligations under the contract or that its performance was excused; (3) that the defendant breached its obligations under the contract; (4) that the plaintiff suffered an injury caused by the defendant's breach. *W. Distributing Co. v. Diodosio*, 841 P.3d 1053, 1058 (Colo. 1992).

---

[11] As best the Court can tell from the record — the parties do not do the math — the payments made under the Wausau Policy totaled $2,172,659.77, consisting of $1,244,435.88 in payment of claims and $928,223.89 in payment of defense costs. (**# 83-9 at 2**.) $600,000 was the only settlement payment involving a wrap-up program credited against the Wausau Policy. (**# 83-9 at 4**.) As far as the Court can tell from the record, it appears that $1,572,659.77 creditable against the 2006 Wausau Policy, consisting of $644,435.88 in payment of claims and $928,223.89 in payment of defense costs.

Environmental has the burden of proof on this claim. Moody contends that it cannot establish that there was a contract between them. Moody points to Environmental's Rule 30(b)(6) deponent who testified that the only operative document was a proposal, not a contract. It contends that the only possible "contract" would be that created when "Moody issued an Insurance Proposal Effective April 1, 2006, subsequently accepted with some modifications by Environmental…" **(#51; ¶84)**. Although this issue is thoroughly briefed by the parties, it is unclear that it requires resolution considering the interpretation of the Umbrella Policy, above.

Environmental's claim against Moody is premised upon its desire to obtain an excess policy that "followed form", Moody's failure to do so, and a resulting insurance gap. Considering the determinations above regarding the Umbrella Policy, it is unclear whether there was any insurance gap that constituted a loss to Environmental. Absent a loss, there is no reason to determine whether an enforceable contract existed or not.

## VI. CONCLUSION

Accordingly, the Plaintiff's Motion for Summary Judgment (**# 79**) is **GRANTED in so far as the Court declares that the Umbrella Policy "followed form" with regard to Supplementary Payments, but not Wrap-up Settlement Payments.** This resolves AGLIC's first and second claims for declaratory relief and Environmental's first Counter-claim. AGLIC's fourth claim is **DISMISSED AS MOOT**. The remainder of this Motion is **DENIED WITHOUT PREJUDICE**. Moody's Motion for Partial Summary Judgment (**# 80**) is **DENIED, without prejudice**.

In light of the declarations contained herein, within 21 days, the parties shall prepare and file a Joint Status Report advising the Court as to whether there are issues that will require a trial. The Report shall specifically identify what claims remain and as to each what factual disputes exist. The parties shall jointly file their Proposed Final Pretrial Order within 21 days.

Dated this 26th day of March, 2019.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge